■ STATE OF NEW YORK, Respondent, v. MOBIL OIL CORPORATION, Appellant.— Order, Supreme Court, New York County, entered January 30, 1973, which, inter alia, denied the motion to dismiss the first and second causes of action, insofar as appealed from, reversed, on the law, without costs and without disbursements, and the first and second causes of action are dismissed. The first two causes of action charge the defendant with a deliberate policy of price discrimination allegedly in violation of the Donnelly Act (General Business Law, § 340 et seq.). The first cause of action requests injunctive relief and the second cause of action requests monetary damages based on the same statutory violation. The discrimination alleged is known in the trade as " dealer aid." It results in some dealers obtaining defendant's products at a lower rate than other dealers, even though both groups of dealers are in the same geographical area and receive deliveries from the same terminal. The " dealer aid," it is alleged, is administered in an arbitrary fashion without apparent justification and results in price discrimination inhibiting effective competition in the retail marketplace. We are constrained to reverse the determination of Special Term. Our courts have recognized that the New York Legislature in initially enacting section 340 et seq. of the General Business Law followed the model of the Sherman Antitrust Act (U. S. Code, tit. 15, § 1) (see, e.g., Matter of Aimcee Wholesale Corp. (Tomar Prods.), 21 N Y 2d 621, 626; Meenan Oil Co. v. Long Is. Light. Co., 39 A D 2d 233, 237). Price discrimination, per se, was not covered in the Sherman Act and the subsequent enactment of the Clayton (U. S. Code, tit. 15, § 12) and Robinson-Patman Acts (U. S. Code, tit. 15, § 13) remedied that failing in the Federal statutory scheme. The New York State Legislature did not amend the Donnelly Act but, rather, has adopted a policy of legislating against price discrimination on an industry-by-industry basis (see, e.g., Public Service Law, § 65, subd. 2 [governing gas and electric utility rates]; Alcoholic Beverage Control Law, § 101-b, subd. 2 [governing liquor industry prices]; Insurance Law, § 183, subd. [c] [governing insurance premium rates]; Agriculture and Markets Law, § 258-t [governing milk prices]). Since the complaint is not couched in terms of general restraint of trade but rather relates solely to price discrimination, the pleading is insufficient and must be dismissed (McGraw Elec. Co. v. Lockyer, 267 App. Div. 897; American Broadcasting-Paramount Theatres v. Hazel Bishop, Inc., 31 Misc 2d 1056, 1060). Legislative action must therefore be initiated in order to afford the relief presently sought. Concur — Markewich, J. P., Nunez, Tilzer and Lane, JJ.; Kupferman, J., dissents in the following memorandum: The two causes of action under challenge here allege price discrimination in violation of section 340 of the General Business Law, the Donnelly Act. The defendant contends that the Donnelly Act was patterned on the classic Sherman Act (U. S. Code, tit. 15, § 1) violation which had to be broadened by the Robinson-Patman Act (U. S. Code, tit. 15, § 13) in order to reach price discrimination. Defendant cites respectable authority (American Broadcasting-Paramount Theatres v. Hazel Bishop, Inc., 31 Misc 2d 1056), in which Presiding Justice McGivern (then Justice McGivern) seems to have reached this conclusion. Since that time, however, the Court of Appeals in Columbia Gas of N. Y. v. New York State Elec. & Gas Corp. (28 N Y 2d 117),

allowed a claim for restraint of trade similar to a tying arrangement to proceed under the Donnelly Act, saying (pp. 127–128): "Such a business practice bears a superficial resemblance to a tying arrangement which, by inhibiting competition in the market place, is unreasonable and illegal. (See *Northern Pac. Ry. Co.* v. *United States*, 356 U. S. 1; *Fortner Enterprises* v. *United States Steel*, 394 U. S. 495, 507." and again (pp. 128–129): "But the mere fact that the challenged practice may not be deemed a tie-in does not automatically immunize it from attack under the Donnelly Act. Even though the defendant's promotional activity is not illegal as a matter of law, it may still be unlawful if it can be shown to have actually restrained competition. (Cf. *United States* v. *Griffith*, 334 U. S. 100, 107 *et seq.*) Therefore, despite our reservations concerning the sufficiency of the second cause of action, we are reluctant to foreclose the plaintiff from an opportunity of factually demonstrating illegality in a comprehensive rule of reason inquiry (see, e.g., *Standard Oil Co.* v. *United States*, 283 U. S. 163, 179; *Chicago Bd. of Trade* v. *United States*, 246 U. S. '231, 238–239), especially since there will, in any event, be a trial on the merits of the first cause of action. Since, then, it does no violence to the plaintiff's pleading to permit proof at the trial of possible anticompetitive effects, if any, of the defendant's promotional plan, the motion to strike the second count of the complaint was properly denied." Chief Judge Breitel (then Judge Breitel) in his dissent, while approaching the matter from a different view, in considering whether a tie-in sale may constitute a Sherman Act violation, acknowledged that the Federal courts have so held, but went on to say (p. 131): "Be that as it may, it does not necessarily follow that New York courts will or should give their similar statute the same interpretation. They have not before this, and there is no compulsion, logical or otherwise, that they do so." In sum, the State of New York should not be foreclosed in the application of its strong public policy in favor of free competition (*Matter of Aimcee Wholesale Corp. [Tomar Prods.]*, 21 N Y 2d 621, 625, 626), by historical claims that the Sherman Act was limited and needed amendments to reach a wide range of possible trade regulatory devices to prevent restraint of trade. The New York Law was originally enacted in 1897. In its current reach to prevent restraint of competition, it contains language broader in scope than the Sherman Act. Section 1 of the Sherman Act provides as follows: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal". Subdivision 1 of section 340 of the General Business Law, the Donnelly Act, provides as follows: "1. Every contract, agreement, arrangement or combination whereby A monopoly in the conduct of any business, trade or commerce or in the furnishing of any service in this state, is or may be established or maintained, or whereby Competition or the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state is or may be restrained or whereby For the purpose of establishing or maintaining any such monopoly or unlawfully interfering with the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state any business, trade or commerce or the furnishing of any service is or may be restrained, is hereby declared to be against public policy, illegal and void." A cursory reading will show that in the State law not only a contract or combination is involved, but also any agreement or arrangement. It was originally considered to be "little more than a codification of the common law upon the subject" (*Matter of Davies*, 168 N. Y. 89, 101). As to the common law: "The law of New York early limited arrangements between business persons which tended

to control the flow of goods and services, and prices." (See 1 State Antitrust Laws, Marketing Laws Survey [Works Progress Admin., U. S. Govt. Print. Off., 1940], p. 495.) See, also, *Park & Sons Co.* v. *National Wholesale Druggists' Assn.*, 175 N. Y. 1.) In other words, the New York law is not limited by the Sherman Act interpretations. Many State antitrust laws are similar to the Sherman Act in language and some are more specific. (Competition and Monopoly by Mark S. Massel [Brookings Institution, 1962], ch. 3, n. 253.) Further, the allegations of the complaint as to serious detriment to competition and the public might cover situations contemplated in section 3 of the Robinson-Patman Act. As was said in page 201 of the Report of the Attorney-General's National Committee to Study the Antitrust Laws (March 31, 1955) (Cochairmen Stanely N. Barnes and S. Chesterfield Oppenheim) : "Predatory price slashing obviously constitutes an attempt to monopolize, already rendered a crime by Section 2 of the Sherman Act". Therefore, the Sherman Act area is or could be encompassed. Certainly, inasmuch as other causes of action of the complaint go on to trial, these causes should also be considered on the merits, and I would affirm. (*Columbia Gas of N. Y.* v. *New York State Elec. & Gas Corp.*, 28 N Y 2d 117, 128, *supra*.)